**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 53493**

| | | |
|---|---|---|
| In the Interest of:  John Doe, A Child Under Eighteen (18) Years of Age. | ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH & WELFARE, | ) ) ) | Filed:  July 8, 2026 |
| | ) | Melanie Gagnepain, Clerk |
| Petitioner-Respondent, | ) ) | |
| v. | ) ) | |
| JANE DOE (2025-45), | ) ) | |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Second Judicial District, State of Idaho, Nez Perce County.  Hon. Sunil Ramalingam, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Krueger & Papworth Law, LLC; Ayla C. Krueger, Lewiston, for appellant.

Hon. Raúl R. Labrador, Attorney General; Briana Allen, Deputy Attorney General, Lewiston, for respondent.

_____

TRIBE, Chief Judge

Jane Doe (2025-45) appeals from the judgment terminating her parental rights to John Doe (Child), arguing it was impossible for her to comply with the case plan.  Doe also argues the magistrate court lacked substantial and competent evidence to find she neglected Child and that termination of her parental rights is in the best interests of Child.  We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2023, Child Protection Services in Washington contacted the Nez Perce County Sheriff's Department in Idaho to conduct a welfare check on Child.  The deputies found Doe and Child living in a shed at the side of a residence.  The shed was cluttered, had no running

water, and had minimal food.  Animal feces also covered Child's bedding.  Doe was arrested on a warrant.  Child was declared to be in imminent danger and placed in shelter care.

In that same month, the magistrate court held a shelter care hearing and granted the Idaho Department of Health and Welfare (Department) legal custody of Child.  In January 2024, the magistrate court approved and adopted a case plan with the primary goal of reunification within twelve months from the date of Child's removal.  To achieve reunification, the case plan required, among other things, Doe to:  (1) address her substance abuse by attending all recommended services, submit to requested drug screenings, and demonstrate ninety days of consistent sobriety; (2) participate in parenting classes and demonstrate protective parenting, and understand Child's needs; (3) participate in scheduled visits with Child to ensure ongoing development of the parent-child bond; (4) establish and maintain stable and safe housing for herself and Child; (5) participate in Child's medical care and academic development to recognize Child's needs and progress; (6) demonstrate the ability to meet her own needs for food, clothing, and shelter and/or access resources available to meet the financial needs of Child; and (7) complete a mental health evaluation and engage in all recommended services subsequent to the evaluation.

In July 2024, the magistrate court reviewed Doe's progress on the case plan and conditionally removed the substance abuse and visitation requirements from the plan because Doe completed the substance abuse evaluation, showed more than ninety days of sobriety, and attended all scheduled visitations with Child.  However, the magistrate court noted the Department may reinstate the tasks should the need arise.  By January 2025, Doe had relapsed and was arrested twice (within six days) and subsequently charged with two separate felony possession of a controlled substance charges.  Doe did not meaningfully engage in substance abuse treatment until late February 2025--after the Department filed the termination petition--and, although she later participated in treatment and achieved a period of sobriety, she did not complete treatment or a relapse prevention plan by the time of trial.

Since the implementation of the case plan, Doe struggled to maintain stable housing. Following Child's removal, Doe lived in a tool shed, a homeless encampment, a state park, and, later, a transitional sober living home before being evicted in September 2024.  In November and December 2024, Doe declined two separate housing opportunities and did not move into a shelter until January 2025.  Over the course of the case, Doe cycled through shelters,

2

short-term placements, and unsuitable living arrangements, including a cluttered outbuilding (without basic utilities) deemed inappropriate for a child. Doe submitted only one housing application and did not secure housing suitable for reunification by the time of trial. Additionally, Doe failed to consistently inform the Department of her living arrangements, hindering the Department's ability to assess or approve potential placements.

Doe was also unable to maintain stable employment, which would ensure financial stability to meet Child's basic needs. Doe was unemployed from November 2023 to February 2024. Doe worked briefly at a hotel until she was "let go" in May 2024. Doe had an employment opportunity with a home healthcare agency, but the opportunity fell through due to her background check. Doe was employed as a flagger from August to October 2024 before being laid off due to the end of the seasonal work. In total, Doe was employed for approximately four months during the case. By trial, although she had begun pursuing job training and later obtained temporary employment, Doe acknowledged she was not financially prepared to care for Child.

In January 2025, the Department filed a motion to change the permanency goals from reunification to termination of parental rights and adoption, which the magistrate court granted. The Department then filed the petition for termination. The termination trial began in August 2025. The magistrate court issued its written findings of fact and conclusions of law, finding by clear and convincing evidence that Doe neglected Child and that termination of Doe's parental rights is in the best interests of Child. Doe appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. Idaho Code § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental

3

liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the trial court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## III.

## ANALYSIS

Doe argues the magistrate court lacked substantial and competent evidence to find she neglected Child and that termination of Doe's parental rights is in the best interests of Child. The Department counters that the magistrate court's findings are supported by substantial and

4

competent evidence. For the reasons set forth below, we affirm the judgment terminating Doe's parental rights.

## A.     Neglect

Doe challenges the sufficiency of the evidence supporting the magistrate court's findings that she neglected Child. First, Doe argues she could not successfully complete her case plan, not because of her actions or decisions but because of the lack of resources, such as housing. Second, Doe argues that the magistrate court erred in concluding she neglected Child because Doe made substantial progress on her case plan.

Historically, neglect exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act (CPA) case and the Department has had temporary or legal custody of the child for fifteen[1] of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

The magistrate court found that termination of Doe's parental rights was warranted based on her failure to comply with the court-ordered case plan. The magistrate court determined the Department had custody of Child for fifteen of the most recent twenty-two months and that Doe did not achieve reunification within that statutory period because of her noncompliance with the case plan. The magistrate court emphasized that Doe never secured appropriate housing throughout the case, as required by the case plan. Although the magistrate court acknowledged Doe's financial hardship and expressly rejected termination based on poverty alone, it found that Doe's failure to obtain suitable housing persisted from the beginning of the case through trial. At the time of trial, Doe was still living in a shelter and had not remedied the conditions that led to Child's removal.

With respect to the case plan task regarding Doe's substance abuse, the magistrate court noted that, although Doe initially complied by obtaining a substance abuse evaluation, her subsequent felony drug charges led to renewed requirements for treatment, and she had not

---

[1]     At the time the Department filed the petition to terminate Doe's parental rights, the statutory time frame under I.C. § 16-2002(3)(b) was fifteen out of the most recent twenty-two months. Subsequently, the statute was amended to twelve out of the most recent twenty-two months.

completed substance abuse treatment by the time of trial. This incomplete compliance further supported the magistrate court's determination that Doe failed to satisfy the case plan.

The magistrate court found that Doe's own choices interfered with her ability to complete the case plan. Specifically, Doe chose to remain in Washington, which complicated the Department's ability to assist her, and she accepted employment that limited her participation in visits and services. The magistrate court further found that Doe's progress toward compliance did not meaningfully improve until after criminal charges were filed and the termination petition was initiated. The magistrate court concluded that the case plan tasks were reasonable and designed to achieve reunification, but Doe failed to complete the tasks within the required time frame. Accordingly, the magistrate court held that Doe's failure to comply with the case plan constituted neglect and provided the basis for termination.

### 1. Impossibility to complete the case plan

Doe argues that her failure to complete the case plan was not the result of her own choices but, rather, due to impossibility because of systemic barriers, lack of resources, and economic circumstances beyond her control. "[I]mpossibility may be asserted as a defense to a claim of neglect founded upon failure to comply with the requirements of a case plan." *Idaho Dep't of Health & Welfare v. Doe (2016-14)*, 161 Idaho 596, 600, 389 P.3d 141, 145 (2016). The impossibility defense cannot stand if the magistrate court finds "the parent is responsible, whether directly or indirectly, for non-compliance with the requirements of a case plan." *Id.* "This requirement reflects the reality presented by parents who engage in behavior that results in non-compliance with no apparent thought or consideration of the effect of that behavior upon the case plan." *Id.*

Doe argues that the magistrate court improperly relied on her decision to remain a Washington resident as a basis for noncompliance with her case plan. Doe contends that her residency in Washington was not a voluntary relocation during the case but her longstanding residence and, thus, should not be treated as a barrier she created. Doe maintains that the Department was aware of her Washington residency from the outset and failed to pursue alternatives that could have improved her access to services. Additionally, Doe asserts that the Department's inability to provide direct services in Washington limited her access to assistance as it could only offer referrals and declined to connect her with Washington-based resources. Doe

further argues that requiring her to change residency was unreasonable and unconstitutional, particularly because doing so would have required her to abandon existing benefits and services in Washington without any guarantee of improved access to housing in Idaho. Finally, Doe emphasizes that her decision to remain in Washington was strategic and aimed at furthering her case plan as she actively utilized available resources and benefits there, which, she argues, were more robust and better suited to support her progress toward reunification.

We note that a focus on what the Department did or did not do during the CPA case is not an impossibility defense but, rather, is a challenge to the Department's efforts regarding reunification during the CPA case disguised as an impossibility defense. "It is well-settled that the Department's efforts at reunification are not relevant to the magistrate court's termination decision under I.C. § 16-2005." *Idaho Dep't of Health & Welfare v. Doe (2019-31)*, 166 Idaho 357, 361, 458 P.3d 226, 230 (Ct. App. 2020).

But even if relevant, the record indicates that the Department's caseworker referred Doe to multiple Washington-based services, including mental health treatment providers, and discussed additional options in nearby areas. The Department also informed Doe about housing programs in Washington, facilitated visitation with Child there and connected Doe with local resources, even though some resources had already been exhausted. Thus, while Doe's Washington residency may have limited her access to certain Idaho-specific benefits, the Department maintains it was not prevented from providing referrals or support across state lines.

Furthermore, the record does not indicate that Doe fully utilized available Washington resources or pursued options available in Washington to secure housing. Doe worked with service providers, which assisted her with housing and employment resources throughout the case. Despite extended assistance, Doe submitted only one housing application and did not secure stable housing by the time of trial. Doe was responsible directly or indirectly for her failure to complete these tasks due to her decisions. Doe maintains that she actively sought housing throughout the case but her inability to secure stable housing was due to limited availability and resource constraints. We disagree. Substantial and competent evidence shows that Doe failed to comply with this task because of her own inability to obtain stable housing, not because of the lack of resources. From the outset of the case in November 2023 through trial, Doe lived in a series of unstable and unsuitable environments, including a shed, a homeless encampment, a tent, shelters,

7

and temporary arrangements. Although Doe briefly stayed in transitional sober living housing, she was unable to maintain it and later returned to living in a tent. Even when Doe obtained housing, the conditions were found to be unsafe and comparable to the original shed from which Child was removed. This domicile consisted of an outbuilding (located in the back of a house), which was full of tools and lacked necessities like water and sanitary facilities. Additionally, Doe did not consistently keep the Department informed of her living situation, which hindered the Department's ability to assess housing or initiate home studies. By the January 2025 deadline for the case plan tasks, Doe was still living in unsafe conditions and remained unable to provide appropriate housing for Child at the time of trial. Such noncompliance is not a product of impossibility resulting from the lack of resources; rather, it reflects Doe's inability to prioritize compliance with the case plan.

Finally, Doe argues that employment requirements conflicted with other case plan tasks, particularly mental health treatment. Doe maintains that prioritizing counseling over employment would have undermined her ability to comply with other critical tasks--particularly those requiring financial stability and housing--while prioritizing employment necessarily limited her ability to attend all counseling sessions.

Doe was employed for approximately four months during the pendency of this case, remaining largely unemployed and dependent on public assistance and donations. Doe did not provide financial support for Child and admitted she was not financially prepared for reunification. At trial, Doe testified that her recent felony charges and prior job attendance issues affected her employability, and testimony from service providers confirmed that her "legal history" created barriers for obtaining work.

Accordingly, while Doe made some efforts to comply with employment-related tasks, the magistrate court concluded that her lack of financial stability, and resulting noncompliance with the case plan, stemmed from these combined factors rather than circumstances beyond her control. *See Doe (2016-14)*, 161 Idaho at 600, 389 P.3d at 145. Consequently, Doe's impossibility defense fails.

### 2.  Additional time to complete case plan

Doe argues that, in light of all the efforts she made during the pendency of this case, termination was premature. Doe argues she made substantial progress on her case plan and should

have been given additional time, particularly with respect to one of the tasks because her efforts mirrored those in cases where termination was found to be premature.

To support her argument, Doe cites to *Idaho Dep't of Health & Welfare v. Doe*, 150 Idaho 752, 250 P.3d 803 (Ct. App. 2011). In that case, a parent was arrested after striking one of his four children while under the influence of alcohol. *Id.* at 753, 250 P.3d at 804. Upon seeing the "filthy and unsanitary" conditions of the home, the Department took all four children into care. *Id.* Following a case plan for reunification, the parent immediately began alcohol treatment and attended Alcoholics Anonymous meetings. *Id.* at 754, 250 P.3d at 805. The parent also attended weekly visits with his children. *Id.* Although the parent relapsed into alcohol use, he restarted treatment, was rehired by his former employer and became the manager, obtained rent-free housing at his place of employment, and was actively searching and saving for a home for his family. *Id.* at 754, 760, 250 P.3d at 805, 811. Despite the guardian ad litem's consistent commendations that the parent was progressing in the case plan, the magistrate court announced it was terminating the parent's rights. *Id.* at 754-56, 250 P.3d at 805-07. Moreover, the magistrate court appeared to treat the termination hearing as presenting only two options--either immediately terminate the parent's rights or immediately return the children to the parent. *Id.* at 762, 250 P.3d at 813. The sole proper inquiry was whether termination was warranted at that time, not whether the parent was ready to resume custody immediately. *Id.* This Court reversed the magistrate court's decision, agreeing with the parent that termination is not in the best interests of the children when the parent had made "substantial strides in treatment for his alcoholism, maintaining sobriety, rebuilding a loving relationship with his children, and achieving financial stability that would enable him to provide appropriate housing for his children." *Id.* at 757-58, 250 P.3d at 808-09 (internal citations omitted).

There are key differences between this case and *Doe*, 150 Idaho 752, 250 P.3d 803. First, the magistrate court here properly inquired about whether termination was appropriate. Second, unlike Doe in this case, the parent in *Doe*, 150 Idaho 752, 250 P.3d 803, underwent consistent treatment, demonstrated substantial efforts at maintaining sobriety, and voluntarily attended additional programs like anger management counseling. Here, despite initial success, Doe relapsed in 2025 and was charged with two separate counts of felony possession of a controlled substance. After the related case plan task was reinstated, Doe did not complete a relapse

9

prevention plan by the time of trial. Although Doe later engaged in treatment, she missed required drug tests and had not completed treatment by the time of trial. Third, while the parent in *Doe*, 150 Idaho 752, 250 P.3d 803, obtained housing for himself and worked toward purchasing a home for his children, here, Doe remained dependent on others for housing and was unable to secure safe, stable housing for herself and Child despite numerous resources provided by the State of Washington. Fourth, while the parent in *Doe*, 150 Idaho 752, 250 P.3d 803, obtained employment and progressed professionally to provide for his family, here, Doe's employment remained scarce. In short, the parent in *Doe*, 150 Idaho 752, 250 P.3d 803, showcased commitment and progress--despite setbacks and a relapse with alcohol--while, here, Doe's evidentiary record shows consistent instability and unchanged behaviors.

Based on the record, the magistrate court appropriately concluded that Doe did not make substantial progress on her case plan. The factual grounds in the record provide substantial and competent evidence to support the magistrate court's finding of neglect.

**B.      Best Interests of Child**

Doe argues that the magistrate court lacked substantial and competent evidence to find that termination of her parental rights is in the best interests of Child. Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe (2013-15)*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court found that Child requires a stable and consistent environment to support Child's development and to avoid regression, crediting testimony that disruptions

significantly set Child back and that the foster family has provided the structure, responsiveness, and secure environment Child needs. The magistrate court noted evidence of Child's progress in the foster parents' care and concluded that continuation of that placement is in Child's best interests. In contrast, the magistrate court found that, despite the passage of time, Doe failed to demonstrate an ability to provide similar stability, citing her lack of appropriate housing, noncompliance with the case plan, and failure to recognize deficiencies in her living situation. Based on this record, the magistrate court determined Doe could not meet Child's needs for consistency and security and that termination of Doe's parental rights is in Child's best interests.

Doe contends that instead of evaluating her ability to care for Child, Doe's relationship with Child, Child's need for a stable environment, and Doe's bond with Child, the magistrate court focused on Doe's economic limitations, lack of employment, and housing instability. The magistrate court was not required to focus on the specific factors Doe emphasizes but was permitted to consider the factors most relevant to the case, including those central to the court-ordered case plan. So long as the magistrate court's best-interests determination is supported by substantial and competent evidence, its reliance on those considerations does not constitute error.

Here, the magistrate court's finding that termination is in the best interests of Child is supported by substantial and competent evidence. Doe cannot provide Child with a stable and permanent home as evidenced by her inability to find stable housing throughout the duration of this case. Over the nearly two years this case was pending, Doe only maintained employment for approximately four months and, as a result, was unable to provide financial stability for Child. During the limited period in which Doe was employed, she failed to maintain consistent visitation with Child, attributing her lack of participation to fatigue from her employment. Additionally, Child's foster parents, the Department's caseworker, and a mental health therapist reported that Child was thriving in foster care and had made improvements. Child is in counseling to address Child's adjustment disorder caused, in part, by Doe's inability to provide Child with consistency and stability. Substantial and competent evidence supports the magistrate court's finding that Child will achieve a stable, consistent, and secure environment in

11

the foster home, which are crucial for Child's future development. Doe has failed to show error in the magistrate court's finding that termination is in Child's best interests.

## IV.

## CONCLUSION

The magistrate court's findings that Doe neglected Child and that termination is in Child's best interests are supported by substantial and competent evidence. Doe has failed to show error in the magistrate court's decision to terminate her parental rights. Accordingly, the judgment terminating Doe's parental rights is affirmed.

Judge LORELLO and Judge Pro Tem MELANSON, **CONCUR**.